SECURITY TRUST CO. *v.* SLOMAN.

1. EXECUTION—SALE IN PARCELS.

Statute covering executions (3 Comp. Laws 1915, § 12907) contemplates sale of real estate by described lots or government subdivisions when no intervening cause changes nature of parcel, or when parcels are distinct and independent in description, occupancy, and use; but owner, by use, may convert two or more lots into one known lot, so that parcel may be single although divided by highway or street.

2. MORTGAGES—FORECLOSURE—SALE IN PARCELS—EXECUTION.

With respect to manner of execution sale, whether property shall be sold as one parcel or not, mortgagor's right of redemption of premises is not superior to right of mortgagee to collect debt.

3. SAME—SEVERAL PARCELS USED AS ONE MAY BE SOLD AS ONE.

Although property was described in mortgage as three parcels, it was properly sold as one parcel at execution sale, where, by location, use, and interdependence, the premises constituted one parcel.

4. SAME—ASSIGNMENT OF RENTS—POSSESSION—RECEIVERS.

Under Act No. 228, Pub. Acts 1925, authorizing assignment of rents under trust mortgage, neither taking possession nor appointment of receiver is condition precedent to collection of rents.

5. SAME—STATUTE TO BE GIVEN EFFECT FOR BENEFIT OF BONDHOLDERS.

Act No. 228, Pub. Acts 1925, authorizing assignment of rents under trust mortgage, was designed for benefit of holders of the obligation, and is to be given effect to that end.

6. SAME—FORECLOSURE AND SALE NOT NECESSARY TO EXERCISE OF ASSIGNMENT RIGHTS.

Under said statute, no foreclosure and sale are required to exercise right to rents under assignments, but assignment may become effective at once on default and in advance of foreclosure proceedings.

7. SAME—ASSIGNED RENTS NOT PART OF MORTGAGED PREMISES.
   Rents assigned under trust mortgage are not part of mortgaged premises, nor do they necessarily run with them.

8. SAME—ASSIGNED RENTS CONSTITUTE ADDITIONAL SECURITY.
   Assignment of rents under trust mortgage is by way of additional security, and may be by separate writing at or after execution of mortgage.        •

9. SAME—EFFECT ON GENERAL MORTGAGE LAW.
   Act No. 228, Pub. Acts 1925, authorizing assignment of rents under trust mortgage, makes only such changes in mortgage relation as are essential to give it proper effect, and does not purport to change general mortgage law by modifying method, conditions, or effect of foreclosure, sale, redemption, or possession before or after sale.

10. SAME—WHEN TRUSTEE ENTITLED TO RENTS—RECEIVER MAY BE APPOINTED.
   On default and performance of statutory conditions, trustee is entitled to rents assigned under trust mortgage, and, if this may not be done without disturbing possession of mortgagor, court of equity will give aid, even to extent of putting receiver in possession.

11. SAME—WHEN TRUSTEE'S RIGHT TO RENT CEASES.    *
   Trustee's right to collect rents assigned under trust mortgage continues after foreclosure sale, if there be deficiency, until deficiency is paid; but assignment is not superior to mortgage, and therefore said right ceases at expiration of redemption period, if premises are not redeemed.

12. SAME—PURCHASER AT FORECLOSURE SALE NOT ENTITLED TO ASSIGNED RENTS.
   Purchaser on foreclosure sale under trust mortgage takes only the property and not the rents assigned thereunder, subject to owner's right of possession during redemption period, as it may be modified by trustee's right to collect rents for deficiency.

13. SAME—PURPOSE OF ACT AUTHORIZING ASSIGNMENT OF RENTS.
   Purpose of Act No. 228, Pub. Acts 1925, authorizing assignment of rents under trust mortgage, is to put trustee in mortgagor's shoes until debt is paid, with all his rights to rents and profits as long as he, under general law of mortgages, could enjoy them.

Appeal from Wayne; Gilbert (Parm C.), J., presiding. Submitted October 14, 1930. (Docket No. 69, Calendar No. 35,205.) Decided December 2, 1930.

Bill by Security Trust Company, a Michigan corporation, against Pauline H. Sloman, individually and as executrix of the estate of Eugene H. Sloman, deceased, to foreclose a trust mortgage executed by Eugene H. Sloman to it as trustee to secure bond issue. From order confirming sale by circuit court commissioner, both parties appeal. Affirmed.

*Stevenson, Butzel, Eaman & Long* (*Thomas G. Long* and *Leo W. Kuhn,* of counsel), for plaintiff.

*George E. Brand,* for defendant.

FEAD, J. Under decree of foreclosure of a trust mortgage, affirmed by this court in 248 Mich. 419, sale was had of the whole premises described therein as one parcel. Defendant had demanded that the commissioner offer it in four parcels. Counsel agree that the sale was governed by the statute covering executions, which provides:

"When any real estate offered for sale by virtue of any execution, shall consist of several known lots, tracts, or parcels, such lots, tracts, or parcels, shall be separately exposed for sale, and the defendant may direct which piece or parcel shall be first exposed for sale; and no more of such tracts or parcels shall be exposed for sale than shall appear necessary to satisfy the execution, with the costs and expenses of such sale." 3 Comp. Laws 1915, § 12907.[1]

The property was bid in by plaintiff at some $70,000 less than the amount due on the mortgage.

---

[1] See 3 Comp. Laws 1915, § 12966.

The mortgagor is dead and claim for deficiency is made to his estate. The premises were described in the mortgage and decree as three parcels.

Parcel No. 1 was described as lots in a subdivision and is part of a private land claim. It is rectangular, and consists of 5 tiers of 7 lots each, once separated by streets and alleys which since have been vacated. The 4 northern tiers contain buildings which disregard lot lines. The north alley is vacant. The former street next south, Burrell place, has a water tower and elevator on it. The next alley contains part of a one-story frame building, built also upon the tier next south and connected with a brick building on the tier next north by a bridge. The lower tier of lots has a dilapidated one-story frame building on its southern portion, and on the north a fenced-in lumber yard, extending over the lot lines and connected with a lumber office on what was Merrick avenue, the street north.

Parcel No. 2 adjoins parcel No. 1 immediately on the east and continues its north boundary. It is irregular in form, runs east 138 feet, then diagonally southeast for a distance, then is 226 feet wide south to about the middle of parcel No. 1, then 100 feet wide to about 200 feet south of parcel No. 1, then narrows to 20 feet and runs 460 feet south to Warren avenue. This parcel was described by metes and bounds and is part of a different private land claim than parcel No. 1. Buildings are packed into the wide portion of the parcel.

Parcel No. 3 is a 20-foot strip from Warren avenue south to the Grand Trunk Railway tracks and was described by metes and bounds.

The property is used for manufacturing and storage, contains 10 brick, 1 stucco, and 5 frame buildings. They are occupied by 25 tenants, several

using the same building in some cases. Railroad tracks run north on parcel No. 3 from a freight line and cross Warren avenue. One track runs straight north on parcel No. 2 between the buildings. Another track bears to the west, and, at Merrick avenue, strikes the boundary between parcels Nos. 1 and 2 and straddles it to a point close to the northern limits of the property. Loading docks are connected with various buildings, some to reach both sets of tracks. The tracks serve no other property.

Defendant demanded that the lower tier of 7 lots in parcel No. 1 be sold, then the balance of parcel No. 1, and then parcels Nos. 2 and 3, each separately. The question is whether the commissioner was justified in making sale of the whole as "one known parcel."

The statute contemplates sale by described lots or government divisions, when no intervening cause changes the nature of the parcel (*Holton* v. *Moody,* 117 Mich. 321), or when parcels are distinct and independent in description, occupancy and use (*O'Connor* v. *Keenan,* 132 Mich. 646). But the owner, by use, may convert two or more lots into one known parcel, as by erecting a building covering a lot and part of another lot. *Geney* v. *Maynard,* 44 Mich. 578. A parcel may be single although divided by a highway or street. *Thomas* v. *Thomas,* 44 Mont. 102 (119 Pac. 283, 27 Ann. Cas. 616).

The question is a practical one. The premises at bar constituted one parcel by location, use, and interdependence. Lot, street, and alley lines had been obliterated in building so that parcels Nos. 1 and 2 together constitute, in fact, a single tract. Railroad transportation is an integral part of their scheme and value. The sole purpose of parcel No. 3 and the lower part of parcel No. 2 is to serve

the other property with tracks. The service would fail as to parcels Nos. 1 and 2 by a separate sale of parcel No. 3, and as to parcel No. 1 by sale of parcel No. 2. The railroad connects all three, both physically and for the purpose for which the land is used. Without devotion to an entirely different use than that made by defendant, there appears no reasonable or logical method of dividing the property, and it is not conceivable that sale in the parcels demanded by defendant, or in accordance with legal description, could do otherwise than result in material loss. While a mortgagor's right of redemption of part of the premises is to be safeguarded, it is not superior to the right of the mortgagee to collect the debt. We think the premises constituted one known parcel, and the sale as such was proper.

In the mortgage, following the description of the real estate, buildings, etc., appeared the clause—

"and the rents, issues and profits to be derived therefrom, which are hereby specifically assigned as hereinafter more fully set forth."

Later the mortgage provided for collection of the rents under the machinery provided in Act No. 228, Pub. Acts 1925. The foreclosure decree provided for sale of the rents, and they were sold with the premises. The court held they could not be sold, that the purchaser acquired no right in them, and refused confirmation of the sale in this respect. This raises the question of first impression, who, the mortgagor, mortgagee, or purchaser, is entitled to the rents and profits of the premises covered by a trust mortgage, between sale on foreclosure and redemption or expiration of period of redemption, under Act No. 228, Pub. Acts 1925, which reads:

"An act to authorize the assignment of rents and profits of property mortgaged under a trust mort-

gage or deed of trust, to secure bonds or obligations issued or to be issued thereunder.

"*The People of the State of Michigan enact:* SECTION 1. Hereafter, in or in connection with any trust mortgage or deed of trust, to secure bonds or obligations issued or to be issued thereunder, it shall be lawful to assign the rents and profits of the property mortgaged to the trustee or trustees under the trust mortgage or deed of trust for the benefit of the bondholders and holders of the obligations issued or to be issued under the trust mortgage or deed of trust.

"SEC. 2. The assignment of rents and profits, when so made, shall be a good and valid assignment of rents as against the mortgagor or mortgagors or those claiming under or through them from the date of the recording of the trust mortgage or deed of trust, and shall operate against and be binding upon the occupiers of the premises from the date of the filing by the trustee or trustees in the office of the register of deeds for the county in which the property is located of a notice of default in the terms and conditions of the trust mortgage or deed of trust, and service of a copy of such notice upon the occupiers of the mortgaged premises."

Both parties construe the act as providing for the "mortgage" of rents and profits. Plaintiff contends that it abrogates the rule, long established in this State, that the mortgagor is entitled to possession and income of mortgaged property until the expiration of the period of redemption; and that the statute restores the situation existing before the act of 1843, in giving the mortgagee right to immediate possession of the premises, which right, on foreclosure sale, passes to the purchaser. In the alternative, plaintiff suggests that if the right of the trustee to collect rents is not mortgaged and salable,

it continues in the trustee until the debt is paid, even beyond the period of redemption. Defendant contends that the statutory right to collect rents expires on sale, and thereafter they belong to the mortgagor.

Unlike statutes of some States, our act makes neither the taking of possession nor the appointment of a receiver a condition precedent to the collection of rents. It may be necessary in a given case to have the aid of the court, by appointment of receiver, to make collections, but this does not justify the addition, to those imposed by statute, of conditions to the exercise of the right. Collection of rents is not merely an incident to the right of possession of the land, but is a distinct remedy and additional security.

The act is not perfectly drafted nor entirely complete. It leaves something to be read into it by construction. Thus, it does not state the obviously intended requirement that rents collected by the trustee shall be applied on the mortgage debt. But it is workable and its purpose is unmistakable.

Its outstanding features are:

(1) It was designed for the benefit of holders of obligations under trust mortgages, usually the general public who rely on others for financial guidance, and is to be given effect to that end.

(2) While the right to collect rents is as security, it provides for their "assignment," not their "mortgage," as the term is used in connection with other property. No foreclosure and sale are required to exercise the right. The assignment may become effective at once on default and in advance of proceedings for foreclosure.

(3) The rents are not part of the mortgaged premises, nor do they necessarily run with them.

The assignment is by way of additional security. It may, but need not, be made in the mortgage. It may be by separate writing at or after the execution of the mortgage.

(4) The act provides a new remedy not before enjoyed. *Nusbaum* v. *Shapero,* 249 Mich. 252. It does not purport to make any change in the general mortgage law by modifying the method, conditions, or effect of foreclosure, sale, redemption, or possession before or after sale. Only such changes in the mortgage relation can be fairly read into the law as are essential to give it the proper effect.

Counsel have devoted some space to the practical application of the various contentions. The statute was intended to afford a practical remedy and its actual operation is to be considered. However, it is not necessary to discuss the various situations which counsel view with alarm. The proper construction of the act does not seem difficult. It will be given effect in harmony with its language and purpose if we hold, and we do:

1. That the trustee is entitled to the rents upon default and performance of the statutory conditions. If this may be done without disturbing the possession of the mortgagor, well and good. If it may not be so done, a court of equity will give aid, in appropriate manner and on just terms, to conserve the rents to the trustee, even to the extent of putting a receiver in possession.

2. That the right of the trustee to collect rents, being for the benefit of bondholders, continues after sale, if there be a deficiency, until the deficiency is paid; but, as the assignment is given in connection with the mortgage and does not modify its conditions, it is not superior to it. The right ceases at the expiration of the period of redemption if the premises are not redeemed.

3. That the purchaser on foreclosure sale takes only the mortgaged property, not the rents, subject to the owner's right of possession during the redemption period, as it may be modified by the right of the trustee to collect rents for deficiency.

In fine, the purpose of the act is to put the trustee in the shoes of the mortgagor until the debt is paid, with all his rights to the rents and profits as long as he, under the general law of mortgages, could enjoy them.

Under order of court, the rents are being deposited in a special account to await this decision. Counsel for defendant argues that, for several reasons, plaintiff, as trustee, would not be entitled to the rents as for a deficiency on sale. The question is not before us, as this phase of the appeal involves only the right of the purchaser on foreclosure sale to the rents.

The order confirming sale is affirmed, with costs to plaintiff.

Wiest, C. J., and Clark, McDonald, Potter, Sharpe, and North, JJ., concurred. Butzel, J., did not sit.