GIBLIN v. DETROIT TRUST CO.

1. MORTGAGES—TRUSTS—INTENT.
   Real estate mortgage which ran to trustee as mortgagee and latter retained title to the bonds secured thereby *held*, a trust mortgage, that being the intent of the parties.

2. Appeal and Error—Questions Reviewable—Record.

On appeal from decree in suit by trustee appointed by parties deriving interest from mortgagor against duly appointed successor trustee under mortgage for accounting as to rents and profits, question as to title of bonds pledged by trustee, raised by brief of *amici curiæ*, may not be considered, where record does not disclose facts pertaining to foreclosure of pledge.

3. Mortgages—Trust—Notice of Default—Possession of Premises.

Possession of property subject to trust mortgage by duly appointed successor trustee *held*, proper although no notice had been filed with register of deeds and served upon occupiers of the premises, where sole purpose of such notice is to protect such occupiers and mortgagors had consented to occupation of premises by trustee's agent before default and after default said trustee was entitled to occupy premises under assignment of rents and profits clause, notwithstanding claim of parties deriving interest from mortgagors, first asserted long after default had occurred (3 Comp. Laws 1929, §§ 13498, 13499).

Nelson Sharpe and Edward M. Sharpe, JJ., dissenting.

Appeal from Wayne; Murphy (Thomas J.), J. Submitted October 10, 1934. (Docket No. 47, Calendar No. 37,978.) Decided January 29, 1935. Rehearing denied March 5, 1935.

Bill by James Giblin, trustee, and another against Detroit Trust Company, a Michigan corporation, for an injunction restraining defendant from interfering with plaintiffs' possession of real estate and for an accounting. Decree for plaintiffs. Defendant appeals. Reversed.

*David I. Hubar* (*Milton M. Maddin,* of counsel), for plaintiffs.

*Stevenson, Butzel, Eaman & Long* (*A. Hilliard Williams,* of counsel), for defendant.

*Robert S. Marx, amicus curiæ.*

BUTZEL, J. I concur with the holding in the accompanying opinion (Justice EDWARD M. SHARPE's) that the instrument in question is a trust mortgage. After the foreclosure of the first mortgage given by Julius Berman, the title to the property was perfected in the Federal Bond & Mortgage Company through its purchase of the equity of redemption. Berman desired to protect Becker, who held a second mortgage. Berman, however, was unwilling to become personally liable on a new mortgage and bond issue, and accordingly an employee, one Donohue, was procured to act as mortgagor in the new transaction. The Federal Bond & Mortgage Company gave a deed to Donohue, who thereupon signed $150,000 of new bonds, and executed a trust indenture running to the Federal Bond & Mortgage Company, as trustee, by way of security. According to the opening statement of counsel for plaintiffs, no bonds were "sold under this mortgage by the Federal Bond & Mortgage Company. They got this $150,000 of bonds but they were so busy in other matters of theirs they did not dispose of these bonds; maybe the public is lucky; some $125,000 were pledged as collateral security on a loan to the Peoples Savings Bank and $12,000 in another bank, but the title always remained in the Federal Bond & Mortgage Company." The claim is made that under these circumstances the indenture was not a trust mortgage, notwithstanding the fact that it ran to a trustee and contained all the terms and provisions of a trust instrument, including a properly phrased clause assigning the rents as additional security. There is no merit in this contention. It is not within our province to consider the allegation made in the brief of *amicus curiæ* that the bonds pledged to the banking institutions as collateral secu-

rity for certain loans had been foreclosed and subsequently became the property of those banks, inasmuch as this fact does not appear in the record. It is common practice for a financial institution acting as underwriter of mortgage securities to purchase and take over an entire issue of bonds, frequently secured by a mortgage running to itself as trustee, with the purpose and intent of selling the bonds to the public. Such was the purpose and intent in the instant case. The fact that for the time being the bonds could not be sold, and were therefore held by the trustee, does not of itself alter the trust nature of the mortgage, provided it was the intent of the parties at the time the indenture was executed to make it a trust mortgage and to sell the bonds to the public. Plaintiffs rely largely on *Equitable Trust Co.* v. *Milton Realty Co.*, 261 Mich. 571, and 263 Mich. 673, and *Bankers Trust Company of Detroit* v. *Russell*, 263 Mich. 677. The mortgages in these cases did not run to a trustee, and we based our decision on the fact that it was apparent from a consideration of the instruments as a whole that the parties in neither case intended to create a trust. In the instant case, however, it is quite definitely indicated that the intent of the parties was to make the indenture a trust mortgage, and not simply to create a large purchase money mortgage running to one or more mortgagees. Any uncertainty on this score is dispelled by the fact that the owner of the equity of redemption unquestionably treated the instrument as a trust mortgage, as shown by his futile effort to follow the very terms of the mortgage and substitute plaintiff James Giblin as trustee thereunder. He cannot treat the instrument as a trust mortgage for one purpose and ascribe a different character to it for another. The question is raised as to whether Giblin was ever properly ap-

pointed as successor trustee. Even if he were, he was properly removed in accordance with the terms of the trust indenture and the Detroit Trust Company is the successor trustee under the mortgage.

I do not agree with the finding in the accompanying opinion (Justice EDWARD M. SHARPE's) that either of the plaintiffs is entitled to possession of the property from the time of the filing of the bill of complaint. From the very inception of the mortgage, the Republic Management Company, an agent of the trustee, had peaceful possession of the property, and the exhibits show that default occurred long before either of the plaintiffs asserted any rights of possession. Before the right of possession was actively asserted by either of the plaintiffs, the Detroit Trust Company, defendant in the instant case, was in possession for a considerable time, as successor trustee to the Federal Bond & Mortgage Company, of which it was appointed receiver. Defendant's appointment as successor trustee was duly recorded, and was recognized by all parties. It collected the rents and managed the property. Plaintiffs claim, however, that under the provisions of Act No. 228, Pub. Acts 1925 (3 Comp. Laws 1929, §§ 13498, 13499), it was necessary for defendant, as a condition precedent to its right to continue in possession, to file in the office of the register of deeds for Wayne county, in which the property is located, a notice of default in the terms and conditions of the trust mortgage, and to serve a copy of such notice upon the occupiers of the mortgaged premises. Act No. 228, Pub. Acts 1925, § 1, *supra,* establishes the legality of an assignment of rents and profits of the property mortgaged to the trustee or trustees under the trust mortgage or deed of trust, for the benefit of the bondholders, etc. Section 2 of the act provides that such an assignment shall be valid as against the

mortgagor or mortgagors, or those claiming under or through them, from the date of the recording of the trust mortgage or deed of trust. It is further provided, however, that notice of default in the terms and conditions of the trust mortgage or deed of trust shall be filed and served upon the occupiers of the premises. In *Detroit Trust Co.* v. *Detroit City Service Co.*, 262 Mich. 14, we held that the service of such notice upon the occupiers of the premises was solely for their protection. The filing of notice of default with the register of deeds in accordance with the provisions of Act No. 228, Pub. Acts 1925, § 2, also is for the protection of the occupiers of the premises, by indicating upon the record the proper party to whom payment of rent should be made. In the instant case no possible question or objection can be raised on the part of the occupiers of the premises. For a long period of time they had been paying rent continuously to the trustee, or the agent of his predecessor, both of whom held possession with the consent of the owners of the title from the time the mortgage was given. When the owner finally claimed the right to possession, default on the part of the mortgagor had already occurred. When the default took place, the trustee was entitled to continue, under the assignment of rent clause in the mortgage, the possession voluntarily bestowed upon it prior to default. Possession by defendant was therefore proper.

Our attention is called to *Detroit Properties Corp.* v. *Detroit Hotel Co.*, 258 Mich. 156. In that case no voluntary possession was given to the trustee, nor was notice served upon the receiver in possession. In *Reichert* v. *Guaranty Trust Co. of Detroit*, 261 Mich. 315, and *Pines* v. *Equitable Trust Co.*, 263 Mich. 458, we held that possession was proper when

given by the owner. In *Union Guardian Trust Co. v. Commercial Realty Co.,* 265 Mich. 604, cited by plaintiffs, we merely held that when a receiver was improperly appointed, possession wrongfully divested from the owner would be returned to him. Had not possession voluntarily been granted to the trustee by the owner in the instant case, or had any prejudice to the rights of the occupiers of the premises been involved, it would have been necessary that the trustee file notice of default and serve it on the occupiers of the premises. Under the facts of the present case this was entirely unnecessary. Defendant having been properly vested with possession of the property, and default having occurred in the mortgage, and there being no question of prejudice to any right of the occupiers of the premises, defendant was entitled to continue in possession under the assignment of rent clause in the mortgage, notwithstanding the objection of plaintiffs.

The decree of the lower court is reversed and one will be entered in accordance with the foregoing opinion. Defendant will recover costs.

POTTER, C. J., and NORTH and WIEST, JJ., concurred with BUTZEL, J.

EDWARD M. SHARPE, J. (*dissenting*). Julius Berman, the owner of certain property known as La Tourain Apartments, located at 691–693 Seward avenue, Detroit, Michigan, constructed a building thereon in 1922, and in order to pay the cost of construction, he issued bonds in the amount of $150,000 secured by a mortgage to the Federal Bond & Mortgage Company. This was consummated in May, 1922, and in October of the same year he gave a second mortgage to Gertrude Becker to secure a loan of $20,000 on the same property.

In August, 1923, he and his wife conveyed the property by warranty deed to Louis Schmied subject, however, to the two mortgages. In 1929 the Federal Bond & Mortgage Company foreclosed their mortgage by advertisement and bid in the premises on foreclosure sale and obtained title by sheriff's deed. About that time Mr. Becker, who in the meantime had inherited the $20,000 mortgage through the death of his mother, Gertrude Becker, negotiated with the Federal Bond & Mortgage Company on a plan for refinancing the $150,000 mortgage with the idea in mind of saving his $20,000 mortgage, and, as a result of these negotiations, the Federal Bond & Mortgage Company gave a Mr. Donohue a warranty deed of the property dated November 5, 1930, and he in turn executed and delivered to the Federal Bond & Mortgage Company bonds in the amount of $150,000, and with his wife executed a mortgage securing the bonds, said mortgage being dated April 26, 1930, and recorded in the office of the register of deeds of Wayne county, Michigan.

All of the bonds executed in connection with the original mortgage were redeemed by the Federal Bond & Mortgage Company excepting $9,500 which could not be located, and the new bond issue was pledged to the American State Bank and the National Bank of Commerce, of Detroit, as collateral security to loans made to the Federal Bond & Mortgage Company. These bonds were later assigned by the American State Bank to the Peoples Wayne County Bank and by it in turn to the First Wayne National Bank of Detroit, and by the National Bank of Commerce to the Guardian National Bank of Commerce. In May, 1931, the Detroit Trust Company, defendant herein, was appointed receiver of the Federal Bond & Mortgage Company.

In the mortgage executed by Donohue, which is the mortgage involved in the case at bar, the Federal Bond & Mortgage Company designated itself as trustee. Prior to the receivership of the Federal Bond & Mortgage Company the property involved in this case was being managed by a corporation known as the Republic Management Company, a subsidiary corporation of the Federal Bond & Mortgage Company. During the period of this management no objections were made by either Mr. Donohue, Mr. Becker, or Mr. Berman to this arrangement, and the income from the premises was turned over to the Federal Bond & Mortgage Company for the payment of taxes and other obligations in connection with the bond issue.

When the Detroit Trust Company was appointed receiver by the United States district court for the eastern district of Michigan, southern division, the order making such appointment specifically enjoined the Federal Bond & Mortgage Company from exercising any power over any of the mortgages which it held. This restraining order remained in full force and effect until May 29, 1931, and on the same day the Detroit Trust Company was appointed trustee under the instant mortgage and has since acted in that capacity.

September 4, 1931, Donohue and wife, by quitclaim deed, conveyed their interest in the mortgaged premises to William H. Becker, one of the plaintiffs herein, and then on April 1, 1932, appointed James Giblin trustee under the mortgage. On April 28, 1932, the United States district court for the eastern district of Michigan, southern division, entered an order authorizing the Detroit Trust Company, as receiver of the Federal Bond & Mortgage Company, to join with the holders of the bonds and pledgees

in nominating a successor trustee, and they in turn ratified the nomination of the Detroit Trust Company as of May 29, 1931. However, the plaintiffs in April, 1932, demanded possession of the property and upon refusal they filed their bill of complaint on April 18, 1932, asking for possession and an accounting of money received, and upon proofs being taken, the trial court held in favor of the plaintiffs from which decree defendant appeals.

Plaintiffs contend that regardless of whether or not the mortgage is a trust mortgage or what is known as a straight mortgage, they are entitled to possession of the property as of the date of filing their bill of complaint together with an accounting of rents collected from said date; while the defendant contends that the mortgage is a trust mortgage, and that defendant, as trustee under the mortgage, is entitled to possession of the premises together with the rents and profits, and it further claims that it is entitled to this possession by reason of the consent of the mortgagors together with the authority given under Act No. 228, Pub. Acts 1925 (3 Comp. Laws 1929, §§ 13498, 13499), and certain provisions contained in the mortgage.

"In a trust mortgage the ownership of the mortgage passes to the trustee and is held by it or him for the benefit of those who acquire title to the securities issued pursuant thereto." *Equitable Trust Co. v. Milton Realty Co.*, 261 Mich. 571, 577.

It requires no particular form of words to create a trust so long as that intention is expressed. *Bankers Trust Company of Detroit v. Russell*, 261 Mich. 579, and 263 Mich. 677.

"To create a trust, there must be an assignment of designated property to a trustee with the inten-

tion of passing title thereto, to hold for the benefit of others. There must be a separation of the legal estate from the beneficial enjoyments (26 R. C. L. p. 1186)." *Equitable Trust Co.* v. *Milton Realty Co., supra,* 577.

In trusts not charitable it is not always necessary that the *cestui que trust* should be in existence at the time of the creation of the trust. 1 Perry on Trusts (7th Ed.), § 66.

We think the mortgage contains the necessary elements of a trust mortgage. The conveyance was made. to the Federal Bond & Mortgage Company, "but in trust nevertheless for the benefit and security of any and all persons and parties and their respective successors, executors, administrators, and assigns who may at any time hold any of the bonds to be issued hereunder."

In addition, the rents are assigned to the Federal Bond & Mortgage Company as trustee and the property is designated as the trust estate. Moreover, the parties, upon the execution and delivery of this mortgage, intended and considered it as a trust mortgage.

The plaintiff Becker permitted the collection of the rents and management of .the estate by .a subsidiary of the Federal Bond & Mortgage Company and later on appointed plaintiff Giblin successor trustee under the provisions of the mortgage.

We now approach the proposition of who is entitled to possession of the premises together with the collection of the rents. The . record discloses that there is no question of waste, tax titles, receiverships. or foreclosure involved, nor has there been a default entered and recorded as required by Act No. 228, Pub. Acts 1925 (3 Comp. Laws 1929, §§ 13498, 13499).

"By statute in this State the mortgagee of lands is not entitled to possession until after foreclosure." *Morse* v. *Byam,* 55 Mich. 594, 598.

And in a long line of cases it has been held that the mortgagor cannot be deprived of the possession and the collection of the income during the full period of the equity of redemption. *Batty* v. *Snook,* 5 Mich. 231; *Union Guardian Trust Co.* v. *Rau,* 255 Mich. 324.

The instant trust mortgage derives its special powers from the act above quoted, and that act, being in derogation of the common law, must be strictly construed. The trust mortgage contained an assignment of the rents and profits of the mortgaged property as permitted by the act.

"In *Security Trust Co.* v. *Sloman,* 252 Mich. 266, it was said:

" 'The proper construction of the act does not seem difficult. It will be given effect in harmony with its language and purpose if we hold, and we do:

" '1. That the trustee is entitled to the rents upon default and performance of the statutory conditions.'

"The statutory conditions (section 2) required the trustee, if he desired to take advantage of this provision, to file a notice of default in the terms and conditions of the trust mortgage in the office of the register of deeds, and serve a copy thereof upon the occupiers of the mortgaged premises." *Detroit Properties Corp.* v. *Detroit Hotel Co.,* 258 Mich. 156.

The record in the instant case discloses that no such notice was ever filed in the office of the register of deeds, nor served upon the occupiers of the mortgaged premises as required by the act.

If the trustee desires to take the benefits of the assignment of rents clause he may do so by filing a notice of default in accordance with the terms of the act, nor do we think that the voluntary possession

of the premises prior to the filing of the bill of complaint detracts in any way from the plaintiffs' rights. They had a right to revoke that voluntary possession granted to the subsidiary company. *Byers* v. *Byers,* 65 Mich. 598. This revocation became effective when plaintiffs filed a bill of complaint, and upon such filing they were entitled to such possession and the rents therefrom until such time as the trustee elected to file a notice of default as prescribed by the act.

The decree of the lower court should be affirmed, with costs to plaintiff.

NELSON SHARPE, J., concurred with EDWARD M. SHARPE, J. FEAD and BUSHNELL, JJ., did not sit.