EQUITABLE·TRUST CO. *v.* MILTON REALTY CO.*

1. MORTGAGES — TRUST MORTGAGES — ASSIGNMENT OF RENTS AND PROFITS—STATUTES.

Act No. 228, Pub. Acts 1925 (3 Comp. Laws 1929, §§ 13498, 13499), authorizing assignment of rents and profits, applies only to trust mortgage or deed of trust, and becomes effective from date of recording of trust mortgage.

2. STATUTES—CONSTRUCTION—MEANING OF WORDS USED.

In construction of statutes, when words are adopted having settled, definite, and well-known meaning at common law, it is to be assumed they are used with sense and meaning which they had at common law, unless contrary intent is plainly shown (1 Comp. Laws 1929, § 76).

3. TRUSTS—CREATION OF TRUST.

To create trust, there must be assignment of designated property to trustee with intention of passing title thereto, to hold for benefit of others; there must be separation of legal estate from beneficial enjoyments (3 Comp. Laws 1929, § 12977).

4. MORTGAGES — TRUST MORTGAGES — ASSIGNMENT OF RENTS AND PROFITS—STATUTES.

Where mortgagor did not convey to mortgagee as trustee, but as mortgagee, and it simply undertook that, in event of sale by it of whole or any portion of mortgage bonds, it would act for purchaser in capacity of trustee for enforcement of their rights under mortgage, said mortgage was not trust mortgage or deed of trust, and therefore assignment of rents and profits was not authorized under statute (3 Comp. Laws 1929, §§ 13498, 13499).

Appeal from Wayne; Richter (Theodore J.), J. Submitted October 11, 1932. (Docket No. 66, Calendar No. 36,767.) Decided January 25, 1933.

Bill by Equitable Trust Company, a Michigan corporation, against Milton Realty Company, a

---

* For opinion on rehearing, see 263 Mich. 673.

As to separation of legal and equitable estates, see annotation in 12 L. R. A. (N. S.) 549.

Michigan corporation, and others for appointment of receiver to collect rents and profits under an alleged trust mortgage. Bill dismissed. Plaintiff appeals. Affirmed.

*Race, Haass & Allen* (*C. Redman Moon,* of counsel), for plaintiff.

*Joslyn, Joslyn & Joslyn,* for defendants Milton Realty Company and Fenton & Smith Service Company.

*David M. Miro,* for defendant Saks Investment Company.

SHARPE, J. Since this case was submitted, other cases involving a similar question have been presented to this court. We have, in this opinion, given due consideration to the arguments of counsel and the briefs filed in those cases (decisions in which immediately follow).

The bill of complaint filed herein alleged that on March 1, 1929, William J. McDonald, Jr., and his wife executed a mortgage to the Central Trust Company, of Detroit, now the Equitable Trust Company, on certain real estate in that city to secure the payment of bonds in the sum of $85,000, payable serially within seven years from date. It contained the following paragraphs:

"7. It is understood by said mortgagor that said mortgagee is engaged in the business of assisting its borrowing clients in financing buildings, or building enterprises, and that it contemplates the sale of part or whole of this mortgage and of the bonds or obligations to which it is collateral, to some one or more of its other clients, and that in the event it sells the same, or any part thereof, it may attend to

the collection of said principal and interest when and as they become due, and may, if default is made by mortgagor in any of the terms hereof, commence and carry to conclusion foreclosure proceedings, or such other suit or action as to it seems best, and that in so doing said mortgagee may act in the capacity of a trustee for the benefit of all those who may become purchasers of all or any part of the bonds or obligations secured by this mortgage; and upon the mortgagee's receiving payment in full of the interest and principal evidenced by the said bonds or obligations, plus any premiums required to be paid in case said bonds shall be called for redemption before maturity, the mortgagee may and shall be fully authorized to discharge and release this mortgage upon behalf of and for the benefit of those who may then own all or any part of the bonds or obligations secured by this mortgage.

"8.  In addition to and not in denial or modification of all other rights and remedies, either at law or in equity, the mortgagor hereby assigns unto the said mortgagee the rents, issues and profits of and from said mortgaged lands and premises, for the further security of the holders of the bonds or obligations secured hereby and particularly in order that the holders of the said bonds or obligations may have the benefits provided in Act No. 228, Pub. Acts of the State of Michigan for the year 1925, or of any amendments thereof."

It further alleged that all of the bonds were sold by the trust company; that there was default in the payment of interest and taxes, and that plaintiff caused a "notice of assignments of rents" to be filed in the office of the register of deeds and served upon the occupants of the premises, pursuant to Act No. 228, Pub. Acts 1925 (3 Comp. Laws 1929, §§ 13498, 13499); that on February 3, 1932, Mc-

Donald and his wife conveyed the premises by quitclaim deed to the defendant Milton Realty Company, and this company, on February 24th, executed a lease thereof for one year to the defendant Saks Investment Company; that the defendant Fenton & Smith Service Company "claims some right to collect the rents from said premises," and that said defendants refuse to permit the plaintiff to obtain such rents.

Specific performance of the provision of the statute so providing and the appointment of a receiver to collect the same and apply the payments on the interest and taxes until the same were fully paid was prayed for.

A motion for the appointment of a temporary receiver was at once made. In response to the order to show cause, the Milton Realty Company filed its answer to the bill of complaint and asked that it be treated as an answer to the order to show cause. The Saks Investment Company filed its answer, setting up the lease of the premises secured by it, averring that it acquired it in good faith, having paid value therefor, and that its interest in the premises thereby became a vested one and its rights thereunder prior to those asserted by the plaintiff.

On April 7, 1932, an order was entered denying the motion. An agreed statement of facts, of which the above is a summary, was filed on May 25, 1932, and on July 11th the trial court entered a decree denying the prayer for the appointment of a receiver and dismissing the bill of complaint. Plaintiff has appealed.

The decision of the trial court rested upon his finding that the mortgage in question was not a trust mortgage and that the provisions of Act No. 228 were not applicable thereto.

Section 1 of this act (3 Comp. Laws 1929, § 13498) reads as follows:

"Hereafter, in or in connection with any trust mortgage or deed of trust, to secure bonds or obligations issued or to be issued thereunder, it shall be lawful to assign the rents and profits of the property mortgaged to the trustee or trustees under the trust mortgage or deed of trust for the benefit of the bondholders and holders of the obligations issued or to be issued under the trust mortgage or deed of trust."

This statute by its terms applies only to a "trust mortgage or deed of trust," and under section 2 of the act (3 Comp. Laws 1929, § 13499) it becomes effective "from the date of the recording of the trust mortgage."

In *People* v. *Covelesky*, 217 Mich. 90, 100, it was said:

"A well-recognized rule for construction of statutes is that when words are adopted having a settled, definite, and well-known meaning at common law it is to be assumed they are used with the sense and meaning which they had at common law unless a contrary intent is plainly shown."

The rule thus stated but conforms to the statutory provision (1 Comp. Laws 1929, § 76):

"In the construction of the statutes of this State, the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature, that is to say:

"1. All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning."

3 Comp. Laws 1929, § 12977, provides:

''Express trusts may be created for any or either of the following purposes:
''Fifth.  For the beneficial interest of any person or persons where such trust is fully expressed and clearly defined upon the face of the instrument creating it subject to the limitations as to time prescribed in this title.''

Under these provisions no express trust was created.  Counsel for the plaintiff in the cases above referred to contend that—

''A trust mortgage is something that has grown up from business usage, and probably, because of lack of a better title, has been called a trust mortgage.''

When executed and delivered, this instrument was not a trust mortgage or deed of trust.  The trust company was named as ''mortgagee'' therein.  Whether any trust relations should ever exist was dependent upon action on its part.  Had it disposed of only a part of the bonds, it would, under the language used, have been in the position of a mortgagee as to that which it retained.

The provision in the mortgage for assignment of the rents and profits under Act No. 228 is not to the plaintiff as trustee but to it as mortgagee.  When considering this act in *Security Trust Co.* v. *Sloman*, 252 Mich. 266, 274, it was said:

''The act provides a new remedy not before enjoyed. *Nusbaum* v. *Shapero*, 249 Mich. 252.  It does not purport to make any change in the general mortgage law by modifying the method, conditions, or effect of foreclosure, sale, redemption, or possession before or after sale.  Only such changes in the mort-

gage relation can be fairly read into the law as are essential to give it the proper effect.''

Under the terms of the mortgage, the mortgagor did not convey to the plaintiff as trustee, but as mortgagee, and it simply undertook therein that, in the event of the sale by it of the whole or any portion of the bonds, it would act for the purchasers in the capacity of a trustee for the enforcement of their rights under the mortgage. To create a trust, there must be an assignment of designated property to a trustee with the intention of passing title thereto, to hold for the benefit of others. There must be a separation of the legal estate from the beneficial enjoyments (26 R. C. L. p. 1186).

In a trust mortgage, the ownership of the mortgage passes to the trustee and is held by it or him for the benefit of those who acquire title to the securities issued pursuant thereto. But, in this case, the unincumbered title to the mortgage passed to plaintiff. There were not, at that time, and might thereafter never be, any other persons having an interest in it. While the mortgage recited that the mortgagee contemplated disposing of the securities, it was under no obligation to do so. It might have disposed of a part of the bonds and retained the balance thereof. Until some disposition was made by it of the whole or a part of the securities, no trust relation could exist, and any trust which thereafter arose out of a sale by the mortgagee of any of the bonds was created by the operation of law upon the provision in the instrument providing therefor. In our opinion, no trust relation was established by the mortgage at the time of its execution.

The only case to which our attention is called wherein a similar question was presented is *In re*

*Bondholders of York & Cumberland R. Co.,* 50 Me. 552. It was there said (pp. 565, 566):

"By the terms of the deed, Myers is simply mortgagee. He is not named as trustee. He is not trustee in fact, though he may by his own act thereafter become one. The contract secured is with him. It is his contract. The bonds to be issued under it are his. If he keeps the contract and bonds without transferring any, he remains simply a mortgagee. The deed to him on its face and at its inception is not a trust deed within the statute, for that contemplates a deed, where the trust, the trustee and the *cestui que trust* are all created by one and the same instrument. But here, until Myers makes a transfer, he is mortgagee and that alone. It would be absurd to say that he holds the mortgage in trust for himself, before he has assigned any of the bonds of the corporation, and that he is both trustee and *cestui que trust.*   *   *   *

"Whether any trust relations shall ever exist, will depend upon the will of the mortgagee. But in such case there would be no 'deed of trust' 'to trustees for their (the bondholders') use.' The trust would spring into existence, when the transfer should be made, *and not before.* This is in no wise different from any mortgage deed. In all mortgages, the mortgagee may assign a part of demands secured, and he is deemed in equity as holding the title in the nature of a trust for all parties secured by the mortgage. Yet the mortgagee, as such, and before he transfers, is not deemed a trustee—nor after such transfer, is he to be regarded as a trustee within the meaning of the act.   *   *   *

"The statute most obviously does not contemplate one and the same person as trustee and mortgagee, with opposing and conflicting interests, as viewed in one or the other capacity. It does not contemplate the contemporaneous existence of a mortgage and a trust as created by and derived from one and the

same instrument. Yet it is apparent that such results would naturally flow, from the position that Myers, besides being mortgagee, was to be treated as trustee under the statute.''

The decree is affirmed, with costs to appellees.

McDonald, C. J., and Clark, Potter, North, Fead, Wiest, and Butzel, JJ., concurred.